**Cheryle R. JOHNSTON, Receiver, Appellant,**

v.

**Judy Swate CROOK, Appellee.**

No. 14–01–00244–CV.

Court of Appeals of Texas, Houston (14th Dist.).

July 25, 2002.

Cheryle R. Johnson, K. Charles Peterson, Houston, for appellants.

Shawn Russel Casey, Houston, for appellees.

Panel consists of Chief Justice BRISTER and Justices ANDERSON and FROST.

## OPINION ON REHEARING

JOHN S. ANDERSON, Justice.

We overrule appellee's motion for rehearing, withdraw our opinion filed April 11, 2002, and substitute this opinion in its place.

Appellant Cheryle R. Johnston, the receiver (Receiver) appointed to collect a divorce judgment in favor of Dian Frances Hartwell, challenges (1) a take-nothing summary judgment in favor of appellee, Judy Swate Crook; and (2) denial of Receiver's motion for partial summary judgment.[1] We reverse and remand.

## PROCEDURAL BACKGROUND

Six years ago, the supreme court observed, "This case has a convoluted procedural history." *Ex parte Swate*, 922 S.W.2d 122, 123 (Tex.1996). Now, we have before us an additional twist.[2]

The lawsuit began July 9, 1996, when Hartwell sued Crook under the Uniform Fraudulent Transfer Act to recover a house, a diamond ring, and $105,000.[3] Hartwell alleged Tommy E. Swate, husband first of Hartwell, then of Crook, transferred the property to Crook to prevent Hartwell from collecting a post-divorce final judgment she had obtained against Swate. Hartwell pleaded she could not have discovered with due diligence "[c]ertain transfers" by Swate within the four-year statute of limitations.

On October 7, 1998, in an effort to collect Hartwell's post-divorce judgment, Receiver intervened in Hartwell's fraudulent transfer suit. Receiver alleged the court had "jurisdiction over [Receiver's] claims in that they arise from the same facts and circumstances as set out in Plaintiff's Petition to Set Aside Conveyances on file in this action."

In January 2000, Receiver filed a second amended petition to set aside the conveyances, listing only herself (and not Hartwell) as a party. Receiver's allegations against Crook are identical to those in Hartwell's 1996 petition. Receiver also pleaded "[c]ertain transfers [by Swate] could not be discovered with due diligence within the four year statute of limitations," and further alleged, "these causes of action have been brought within one year from the date of discovery." In her amended answer, Crook asserted a general denial and the affirmative defenses of waiver, estoppel, limitations, laches, and *res judicata*. Crook also alleged the cause of action constituted an impermissible collateral attack on Crook's divorce judgment.

Both parties filed traditional motions for summary judgment. Receiver sought judgment against Crook arguing the trial court, in earlier contempt proceedings, already had determined the facts necessary to her fraudulent transfer cause of action. The trial court denied the motion.

Crook then moved for summary judgment, alleging Receiver's claims were barred by estoppel, *res judicata*, the doctrine of collateral attack on existing judgments, and limitations. She alleged the house was transferred on April 2, 1990; the ring, by February 7, 1992; and the cash, by July, 1993. She did not address the issue of the discovery rule, raised by Receiver in her pleadings, in relation to any of the alleged transfers. Receiver responded, alleging the motion, filed three days before the case was set for trial, was not timely filed and contained numerous

1. Crook's name changed during the course of the proceedings. For consistency, we refer to her as Crook although a different name appears on some of the trial court documents.

2. The procedural background is set forth in detail in the supreme court opinion and in the appendix to this opinion.

3. *See* TEX. BUS. & COM.CODE ANN. §§ 24.001–.013 (Vernon 1987 and Supp.2002). Hartwell also sued Swate and Swate's common-law wife. Those claims were tried before a jury.

factual inaccuracies. The trial court granted Crook's motion without stating the grounds.[4]

## DISCUSSION

### Issues Presented and Standard of Review

In point of error one, Receiver argues the trial court erred in granting Crook's motion for summary judgment. In point of error two, Receiver argues the trial court erred in denying her motion for partial summary judgment.

When, as in this case, the parties have filed competing motions for summary judgment, and the trial court grants one motion and denies the other, we may consider the propriety of the denial as well as the grant. *Gramercy Ins. Co. v. MRD Inv., Inc.*, 47 S.W.3d 721, 724 (Tex.App.-Houston [14th Dist] 2001, pet. denied) (citing *Com'rs Court v. Agan*, 940 S.W.2d 77, 81 (Tex.1997)). If the issue raised is based on undisputed and unambiguous facts, we may determine the question presented as a matter of law. *Gramercy Ins. Co.*, 47 S.W.3d at 724. We may then either affirm the judgment or reverse and render the judgment the trial court should have rendered, including one that denies both motions. *Id.* (citing *Jones v. Strauss*, 745 S.W.2d 898, 900 (Tex.1988)). However, if resolution of the issues rests on disputed facts, summary judgment is inappropriate, and we should reverse and remand for further proceedings. *Gramercy Ins. Co.*, 47 S.W.3d at 724 (citing *Coker v. Coker*, 650 S.W.2d 391, 394–95 (Tex.1983)).

The movant for summary judgment has the burden to show there is no genuine issue of material fact and it is entitled to judgment as a matter of law. *Nixon v. Mr. Property Mgmt. Co.*, 690 S.W.2d 546,

548 (Tex.1985). When deciding whether there is a disputed material fact issue precluding summary judgment, the appellate court must take as true all evidence favorable to the non-movant. *Id.* 548–49. The reviewing court must indulge every reasonable inference in favor of the non-movant and resolve any doubts in its favor. *Id.* at 549.

A plaintiff moving for summary judgment must conclusively prove all essential elements of its claim. *See MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex.1986); *Geiselman v. Cramer Fin. Group, Inc.*, 965 S.W.2d 532, 535 (Tex.App.-Houston [14th Dist.] 1997, no writ). A defendant moving for traditional summary judgment assumes the burden of showing as a matter of law the plaintiff has no cause of action against it. *Levesque v. Wilkens*, 57 S.W.3d 499, 503 (Tex.App.-Houston [14th Dist.] 2001, no pet.). Traditional summary judgment for a defendant is proper only when the defendant negates at least one element of each of the plaintiff's theories of recovery, or pleads and conclusively establishes each element of an affirmative defense. *Science Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex.1997). When the trial court does not specify the ground on which it granted summary judgment, we must affirm the judgment if any of the movant's theories with respect to the claim are meritorious. *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex.1989).

## I.

### Point of error one: Did the trial court err in granting Crook's motion for summary judgment?

#### A.

##### *Claim preclusion/issue preclusion*

In her motion for summary judgment, Crook asserted estoppel, *res judica-*

---

4. The interlocutory order became final on February 13, 2001, when the trial court rendered judgment on the verdict on the remaining claims after a jury trial.

*ta*, and the doctrine of collateral attack on existing judgments. Crook alleged "Plaintiffs" had filed an identical suit in the 312th District Court, and the court dismissed "their" intervention with prejudice. In support, Crook attached (1) an order dismissing Hartwell's plea in intervention in the Crook–Swate divorce in the 312th District Court and (2) a copy of a subsequent plea in intervention in the same court by the former receiver, John Eikenburg. Crook did not provide a copy of Hartwell's plea or an order disposing of Eikenburg's plea.

In response, Receiver alleged the 312th District Court had never dismissed the former receiver's (Eikenburg's) plea in intervention. In support, Receiver attached her affidavit stating, "John Eikenburg, in his capacity as Receiver, filed the Plea in Intervention which is attached to [Crook's] motion for Summary Judgment as Exhibit F. That Plea in Intervention has never been dismissed." [5] Receiver also stated she had personal knowledge of the facts in her affidavit, and had worked on the collection of the judgment against Swate since 1993, first at Eikenburg's request, then as Receiver.

Receiver's controverting affidavit created a fact question on Crook's claims of estoppel, *res judicata*, and the doctrine of collateral attack. Summary judgment on these theories would have been error in light of this genuine issue of material fact. *See* TEX.R. CIV. P. 166a(c).

■ In addition, although the trial court dismissed Hartwell's plea "with prejudice," we do not equate such a dismissal with dismissal of a "claim" or "cause of action,"

sufficient to support the defense of *res judicata* or collateral estoppel. *Cf. Mossler v. Shields*, 818 S.W.2d 752, 754 (Tex. 1991) (per curiam) (holding claimant estopped from litigating same claim that had been dismissed with prejudice for discovery abuse). We look not only at the use of "with prejudice" in the order, but also at the status of the record. *See Wilde v. Murchie*, 949 S.W.2d 331, 332 (Tex.1997) (per curiam) (stating ambiguous decree must be interpreted by "reviewing both the decree as a whole and the record" to carry out the property disposition correctly).

■ Both Hartwell and Eikenburg intervened in the action in the 312th District Court after that court had rendered judgment. As such, their interventions were untimely. *See Beach v. Beach*, 912 S.W.2d 345, 348 (Tex.App.-Houston [14th Dist.] 1995, no writ) (stating once final judgment is rendered in case, intervention cannot be filed unless judgment is set aside); *see also First Alief Bank v. White*, 682 S.W.2d 251, 252 (Tex.1984) (stating plea in intervention is too late if filed after judgment and may not be considered unless and until judgment has been set aside). Moreover, an intervenor is a party for purposes of appeal only if (1) she timely files a pleading, and (2) the trial court does not strike the pleading before the entry of final judgment. *Preston v. American Eagle Ins. Co.*, 948 S.W.2d 18, 20 (Tex.App.-Dallas 1997, no writ). Thus, Hartwell and Eikenburg, who filed untimely pleas in intervention after judgment, were never parties and could not have appealed the

5. However, according to the supreme court's recitation of the facts, "Eikenburg sought to intervene in the divorce action in the 312th, but that court dismissed the intervention with prejudice, presumably because it had already rendered final judgment and all that remained was disbursement of the funds in the court's registry to [Crook]." *Ex parte Swate*, 922 S.W.2d 122, 123 (Tex.1996). At oral argument in the present case, Receiver disputed the truth of that statement.

judgment or dismissal of their pleas. *See id.*

■ In short, when, as here, the court dismisses a post-judgment plea in intervention, that dismissal (in contrast to dismissal of a claim of a party) does not constitute a final judgment on the merits sufficient to support the defense of *res judicata* or collateral estoppel regardless of whether the order states dismissal is "with prejudice."

## B.

### *Limitations*

#### (1) *Date the Suit Was Filed*

■ Crook also alleged limitations barred Receiver's claims. As she did in her response to the motion for summary judgment, Receiver sets July 9, 1996 (the date Hartwell filed her petition) rather than October, 7, 1998 (the date Receiver intervened) as the relevant filing date for limitations. The first issue we therefore must address is which filing controls for purposes of limitations.

The Civil Practice and Remedies Code provides:

> If a filed pleading relates to a cause of action, cross action, counterclaim, or defense that is not subject to a plea of limitation when the pleading is filed, a subsequent amendment or supplement to the pleading that changes the facts or grounds of liability or defense is not subject to a plea of limitation unless the amendment or supplement is wholly based on a new, distinct, or different transaction or occurrence.

TEX. CIV. PRAC. & REM.CODE ANN. § 16.068 (Vernon 1997).

In *Foust v. Estate of Walters,* the San Antonio Court of Appeals, in the context of analyzing misnomer, explained, "If the nature of the suit against the defendants remains unchanged, the substitution of parties-plaintiff does not constitute a new suit." 21 S.W.3d 495, 501 (Tex.App.-San Antonio 2000, pet. denied). Receiver's cause of action is identical to, and was substituted for, Hartwell's cause of action against Crook.[6] We conclude the date of Hartwell's·suit controls for purposes of limitations.

#### (2) *Burden of Proof and Limitations under the Uniform Fraudulent Transfer Act*

■ A defendant moving for summary judgment on the affirmative defense of limitations has the burden to establish that defense conclusively. *KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.,* 988 S.W.2d 746, 748 (Tex.1999). Thus, the defendant must (1) conclusively prove when the cause of action accrued, and (2) negate the discovery rule, if it applies and has been pleaded or otherwise raised, by proving as a matter of law there is no genuine issue of material fact about when the plaintiff discovered, or in the exercise of reasonable diligence should have discovered, the nature of its injury. *Id.* If the movant establishes that the statute of limitations bars the action, the nonmovant must then adduce summary judgment proof raising a fact issue in avoidance of the statute of limitations. *Id.*

Receiver sued Crook under section 24.005(a)(1), and alternatively section 24.005(a)(2)(B), of the Uniform Fraudulent

---

**6.** Crook argues Receiver cannot claim in Hartwell's place because Hartwell's petition in the 312th District Court was dismissed and, if Receiver stands in Hartwell's shoes, *res judicata* applies to Receiver's claim. As we discussed above, the summary judgment proof does not establish *res judicata.*

Transfer Act ("UFTA").[7] Before September 1, 1993, the limitations section of the Act provided:

(a) A cause of action with respect to a fraudulent transfer or obligation under this chapter is extinguished unless action is brought:

(1) under Section 24.005(a)(1) of this code, within four years after the transfer was made or the obligation was incurred or, if later, within one year after the transfer or obligation was or could reasonably have been discovered by the claimant.

(2) under Section 24.005(a)(2) or 24.006(a) of this code, within four years after the transfer was made or the obligation was incurred.

Act of June 1, 1987, 70th Leg., R.S., ch. 1004, § 1, sec. 24.010(a)(1), (2), 1987 Tex. Gen. Laws 3388, 3393 (amended 1993) (current version at TEX. BUS. & COM.CODE ANN. § 24.010(a)(1), (2) (Vernon Supp. 2002)).

Thus, in subsection (a)(1) of the UFTA limitations provision, the legislature specifically set forth a "discovery rule" for causes of action based on transfers made with "actual intent to hinder, delay, or defraud any creditor of the debtor." *See*

Act of June 1, 1987, 70th Leg., R.S., ch. 1004, § 1, sec. 24.005(a)(1), 1987 Tex. Gen. Laws 3388, 3390 (amended 1993) (current version at TEX. BUS. & COM.CODE ANN. § 24.005(a)(1) (Vernon Supp.2002)). Furthermore, it distinguished such causes of action from those based on transfers for which reasonably equivalent value was not received in exchange for the transfer. *See* Act of June 1, 1987, 70th Leg., R.S., ch. 1004, § 1, sec. 24.005(a)(2), .006(a) 1987 Tex. Gen. Laws 3388, 3390–91 (amended 1993) (current version at TEX. BUS. & COM. CODE ANN. § 24.005(a)(1), 006(a) (Vernon Supp.2002)). For the latter type of transfers, the legislature provided no discovery rule. In short, the UFTA specifically acknowledges the availability of the discovery rule to cases of transfers made with actual intent to defraud.

In addition, under the UFTA, a transfer was considered made

(A) with respect to an asset that is real property other than a fixture, but including the interest of a seller or purchaser under a contract for the sale of the asset, when the transfer is so far perfected that a good faith purchaser of the asset from the debtor against whom

---

7. Both Hartwell and Receiver cited "TEX. BUS. & COM.CODE ANN. § 24.005(1)." Presumably, the intended citation was "TEX. BUS. & COM. CODE ANN. § 24.005(a)(1)." Section 24.005(a)(1) provided:

(a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose within a reasonable time before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

(1) with actual intent to hinder, delay, or defraud any creditor of the debtor.

Act of June 1, 1987, 70th Leg., R.S., ch. 1004, § 1, sec. 24.005(a)(1), 1987 Tex. Gen. Laws 3388, 3390 (amended 1993) (current version at TEX. BUS & COM.CODE ANN. § 24.005(a)(1) (Vernon Supp.2002)).

Hartwell and Receiver also alleged in the alternative, "in violation of Tex. Bus. & Com. Code Ann. § 24.002, *et seq.* these transfers were not made for fair consideration, and at the time of the transfers ... S[wate] did not have enough property in Texas, exclusive of the property transferred, subject to execution to fully satisfy H[artwell's] judgment." Presumably, this was an attempt to track the language of then section 24.005(a)(2)(B), which referred to transfers without receipt of equivalent value when the debtor intended to incur or believed he would incur debts beyond his ability to pay. *See* Act of June 1, 1987, 70th Leg., R.S., ch. 1004, § 1, sec. 24.005(a)(2)(B), 1987 Tex. Gen. Laws 3388, 3390 (amended 1993) (current version at TEX. BUS. & COM.CODE ANN. § 24.005(a)(2)(B) (Vernon Supp.2002)).

applicable law permits the transfer to be perfected cannot acquire an interest in the asset that is superior to the interest of the transferee; and

(B) with respect to an asset that is not real property or that is a fixture, when the transfer is so far perfected that a creditor on a simple contract cannot acquire a judicial lien otherwise than under this chapter that is superior to the interest of the transferee.

Act of June 1, 1987, 70th Leg., R.S., ch. 1004, § 1, sec. 24.007(1), 1987 Tex. Gen. Laws 3388, 3391 (amended 1993) (current version at Tex. Bus. & Com.Code Ann. § 24.007(1) (Vernon Supp.2002)). Finally:

(3) if applicable law does not permit the transfer to be perfected as provided [in the subsections quoted above], the transfer is made when it becomes effective between the debtor and the transferee;

(4) a transfer is not made until the debtor has acquired rights in the asset transferred; and

(5) an obligation is incurred:

(A) if oral, when it becomes effective between the parties; or

(B) if evidenced by a writing, when the writing executed by the obligor is delivered to or for the benefit of the obligee.

Act of June 1, 1987, 70th Leg., R.S., ch. 1004, § 1, sec. 24.007(2)-(5), 1987 Tex. Gen. Laws 3388, 3391 (amended 1993) (current version at Tex. Bus. & Com.Code Ann. § 24.007(2)-(5) (Vernon Supp.2002)).

With the foregoing provisions of the Uniform Fraudulent Transfer Act in mind, we turn to the three transfers made by Swate to Crook and now challenged by Receiver.

### (3) *The Three Alleged Transfers*

■ **The house.** Crook's only summary judgment proof on transfer of the house was a certified copy of the warranty deed by which Swate conveyed the property to Crook. The deed was dated April 2, 1990, over six years before Hartwell filed her petition. As set forth above, however, UFTA section 24.010(a)(1) specifically allows a cause of action to be brought "within one year after the transfer or obligation was or could reasonably have been discovered by the claimant." Act of June 1, 1987, 70th Leg., R.S., ch. 1004, § 1, sec. 24.010(a)(1), 1987 Tex. Gen. Laws 3388, 3393 (amended 1993) (current version at Tex. Bus. & Com.Code Ann. § 24.010(a)(1) (Vernon Supp.2002)).

■ Receiver pleaded the discovery rule in an amended petition filed before the motion for summary judgment. Hartwell pleaded it in her original petition. Crook therefore had to prove as a matter of law there was no genuine issue of material fact about when Receiver discovered, or in the exercise of reasonable diligence should have discovered, the allegedly fraudulent transfer. *See KPMG Peat Marwick*, 988 S.W.2d at 748. At oral argument, Crook suggested the registered warranty deed sufficed to negate the discovery rule. Registration of a fraudulent conveyance at a certain date, however, is merely one circumstance bearing on the creditor's actual or presumed knowledge. *Eckert v. Wendel*, 120 Tex. 618, 40 S.W.2d 796, 797 (1931). "[T]he intent to hinder, delay, and defraud which makes a gift or conveyance void as to creditors is rarely or never declared on the face of the deed." *Id.* at 801.

Swate transferred the house to Crook in 1990, over two years after Hartwell instituted a lawsuit against Swate to recover overdue child support and alimony. At the time of the transfer, Crook was still married to Swate, and the warranty deed states only the conveyance was "for a good and valuable consideration." Because the

warranty deed did not conclusively establish when Receiver knew or should have known about the allegedly fraudulent transfer of the house, Crook's summary judgment proof did not conclusively establish limitations had run on Receiver's challenge to that transfer.

In her motion for rehearing, Crook argues (1) this court's reliance on *Eckert* is misplaced and (2) the decision in this case conflicts with *Quarles v. Hardin*, 249 S.W. 459 (Tex.Com.App.1923). We disagree. Like the present case, *Eckert* was a limitations case; *Quarles* was not. In *Eckert*, as in the present case, the allegedly fraudulent transfer was made when the transferor was under an obligation, not yet reduced to judgment, to the person subsequently seeking to recover the obligation. *See Eckert v. Wendel*, 57 S.W.2d 865, 865–66 (Tex.Civ.App.-San Antonio 1933, no writ) (setting forth chronology of case). In *Quarles*, the obligation arose after the allegedly fraudulent transfer. *See* 249 S.W. at 460 (stating Quarles owed nobody anything at the time of the deed). In *Eckert*, the court was considering **when** the fraudulent transfer might reasonably have been discovered; in *Quarles*, it was considering **whether** subsequent creditors should be held to have knowledge of the transfer they alleged to be fraudulent and whether recording of the deed rendered impossible any perpetration of fraud by virtue of it. *See Eckert v. Wendel*, 120 Tex. 618, 40 S.W.2d 796, 797 (1931); *Quarles*, 249 S.W. at 462. *Eckert*, not *Quarles*, applies in the present case.

■ **The ring.** In support of her argument limitations had expired on the transfer of the ring, Crook points only to an unverified petition in intervention served by Swate's mother, Willie Gray Watts, on February 7, 1992. Watts alleged in part:

1. Intervenor has an interest in the matter in controversy in that Petitioner, [Crook], is in possession of a diamond ring of Intervenor's of an approximate value of $52,000.00. The diamond ring was purchased by Intervenor by funds held in trust.

2. This diamond ring is believed to be in the possession of Petitioner, [Crook], and Intervenor seeks the return of the diamond ring prior to the court's determination of the division of the parties marital property.

3. Intervenor alleges that the diamond ring was placed in Respondent's TOMMY ERNEST SWATE, possession for safe keeping but has since been claimed by Petitioner, [Crook], as community property of the parties.

We question whether this pleading constitutes competent summary judgment proof. *Cf. Laidlaw Waste Sys. (Dallas), Inc. v. City of Wilmer*, 904 S.W.2d 656, 660 (Tex. 1995) (referring to pleadings in case then before court and stating, generally pleadings are not competent evidence even if sworn or verified). Regardless, the March 26, 1992 Crook Swate divorce judgment is also part of the summary judgment proof. The typewritten portion of that divorce judgment awarding to Crook all "personal effects in the possession of or subject to the sole control" of Crook initially excluded the ring from that category of property awarded to her, but this exclusion was later lined out. Thus, the summary judgment proof establishes a transfer of the ring to Crook occurred at least by March 26, 1992.

Like the registration of the warranty deed, the judgment of divorce is merely one circumstance bearing on Receiver's actual or presumed knowledge. *Cf. Eckert*, 40 S.W.2d at 797. The Crook Swate judgment of divorce did not conclusively establish when Receiver knew or should have

known about the allegedly fraudulent transfer of the ring. Crook's summary judgment proof did not conclusively establish limitations had run on transfer of the ring.

**The cash.** The transfers of cash at issue occurred from May to July 1993. Crook implicitly concedes, if the date of Hartwell's suit controls, limitations does not bar the action. Because the date of Hartwell's suit controls, Receiver's challenge to the transfers of cash to Crook is not time barred.

The trial court erred in granting Crook's motion for summary judgment. We sustain Receiver's point of error one.

## II.

**Point of error two: Did the trial court err in denying Receiver's motion for summary judgment?**

■ In point of error two, Receiver argues the trial court erred in denying her motion for summary judgment. As plaintiff, Receiver was entitled to summary judgment only if she conclusively proved all essential elements of her claim. *See MMP, Ltd.,* 710 S.W.2d at 60; *Geiselman,* 965 S.W.2d at 535.

Receiver sued Crook under Texas Business and Commerce Code section 24.005(a)(1), and alternatively under section 24.005(a)(2)(B).[8] Under subsection (a)(1), Receiver was required to prove Swate's "actual intent to hinder, delay, or defraud any creditor of the debtor." Act of June 1, 1987, 70th Leg., R.S., ch. 1004, § 1, sec. 24.005(a)(1), 1987 Tex. Gen. Laws 3388, 3390 (amended 1993) (current version at Tex. Bus. & Com.Code Ann. § 24.005(a)(1) (Vernon Supp.2002)). Under subsection (a)(2)(B), Receiver was required to prove Swate did not receive a

reasonably equivalent value for the transfer and he "intended to incur, or believed [he] would incur, debts beyond [his] ability to pay as they became due." Act of June 1, 1987, 70th Leg., R.S., ch. 1004, § 1, sec. 24.005(a)(2)(B), 1987 Tex. Gen. Laws 3388, 3390 (amended 1993) (current version at Tex. Bus. & Com.Code Ann. § 24.005(a)(2)(B) (Vernon Supp.2002)).

■ The question whether a conveyance is made with the intent to delay, hinder, or defraud creditors is ordinarily a question of fact for the jury, unless the fraud is admitted, the fraudulent intent appears on the face of the instrument of conveyance, or there is some interest reserved in the property inconsistent with the alleged conveyance. *Letsos v. HSH Inc.,* 592 S.W.2d 665, 670 (Tex.Civ.App.-Waco 1979, writ ref'd n.r.e.). If fraudulent intent is only to be deduced from facts and circumstances the law considers as mere "badges of fraud" and not fraud *per se,* these matters must be submitted to the trier of fact, who then draws the inference as to the fairness or fraudulent character of the transaction. *Quinn v. Dupree,* 157 Tex. 441, 303 S.W.2d 769, 774 (1957); *Coleman Cattle Co. v. Carpentier,* 10 S.W.3d 430, 434 (Tex.App.-Beaumont 2000, no pet.).

Receiver's summary judgment proof consisted of the following: (1) Receiver's affidavit attesting to the truth of the facts alleged in the motion and the authenticity of the attached documents; (2) the March 15, 1993 agreed order for the clerk of the 312th District Court to pay Crook from funds in the court's registry; (3) the September 10, 1993 contempt order; (4) the May 10, 1996 supreme court opinion granting habeas corpus relief; and (5) a June 21, 1996 memorandum by the presiding trial judge. Receiver did not cite the dis-

8. *See supra* note 7.

trict court to any portions of the documents establishing Swate's actual intent to hinder, delay, or defraud, or establishing Swate did not receive equivalent value for the transfers. Nor does Receiver cite this court to any such evidence.

Instead, Receiver invokes the doctrine of collateral estoppel and argues the necessary issues were resolved in her favor in the contempt proceedings. That Swate may have caused funds to be transferred in violation of a court order does not conclusively establish intent to defraud or the value of any consideration given in return.

The trial court correctly denied Receiver's motion for summary judgment against Crook. We overrule Receiver's point of error two.

## CONCLUSION

We reverse the summary judgment ordering the Receiver take nothing by her cause against Judy Cox Swate Crook, and remand Receiver's claims against Crook for further proceedings consistent with this opinion. The remainder of the final judgment of February 13, 2001 is unaffected by this opinion.

## APPENDIX
### THE HISTORY OF THE CASE

| Date | Court | Event |
| --- | --- | --- |
| 10–7–81 | 309 | Court renders divorce decree in the marriage of Tommy E. Swate and Dian Frances Hartwell. |
| 3–2–88 | 309 | Hartwell sues Tommy Swate for non-payment of child support and alimony. |
| 4–2–90 | | Tommy Swate conveys Briar Hollow house to Judy Swate [Crook], his then wife. Deed is recorded in Harris County June 1, 1990. |
| 2–18–92 | 309 | Court renders a post-divorce final judgment against Tommy E. Swate and in favor of Dian Frances Hartwell for $572,284.14 plus interest. |
| 3–26–92 | 312 | Court renders final decree of divorce in the marriage of Judy Swate [Crook] and Swate.[9] |
| 7–24–92 | 309 | Court appoints John Eikenburg receiver to take possession of Swate's non-exempt property to satisfy the final judgment in favor of Hartwell and orders Swate to turnover such property to Eikenburg. |
| 11–6–92 | 312 | Court dismisses with prejudice a plea in intervention filed by Hartwell. |
| 11–30–92 | 312 | Eikenburg files a plea in intervention, alleging he has reason to believe (1) Crook and Swate are in possession of non-exempt property that was the subject of the 7–24–92 turnover order and (2) "funds and property have been transferred to third parties in attempt to conceal the true extent of the nonexempt assets." |

9. Crook's name changed during the course of the proceedings. For consistency, we refer to her as Crook even though a different name appears on some of the trial court documents.

| | | |
|---|---|---|
| 3-15-93 | 312 | Court renders an "agreed order on motion to withdraw funds to pay debts" ordering the clerk to issue a check to Crook from amounts in her trust account or in the registry. |
| 5-10-93 | 309 | Court orders Crook to turn over to Eikenburg funds from the registry of the 312th District Court on Crook's receipt of those funds. |
| 9-10-93 | 309 | Court holds Crook in contempt for not complying with its 5-10-93 order. |
| 1-20-94 | 309 | Court issues an order of commitment. |
| 5-10-96 | | Texas Supreme Court grants Crook habeas corpus relief, holding the commitment order void because the order enhanced punishment without giving Crook notice or an opportunity to be heard and thus deprived Crook of due process. *Ex parte Swate*, 922 S.W.2d 122, 125 (Tex.1996). |
| 7-9-96 | 309 | Hartwell sues Swate, Crook, and Adrianna Marquez (Swate's common law wife), in part alleging the following three transfers from Swate to Crook in violation of Texas Business and Commerce Code:<br>• real property at 10 Briar Hollow Lane, No. 42;<br>• a diamond ring, and<br>• $105,000, of which $49,000 was transferred by the 3-15-93 order.<br>Hartwell pleads the discovery rule. |
| 12-9-97 | 309 | Cheryle R. Johnston succeeds Eikenburg as receiver. |
| 10-7-98 | 309 | Johnston files a plea in intervention in Hartwell's suit against Swate, Crook, and Marquez, alleging the court "has jurisdiction over Johnston's claims in that they arise from the same facts and circumstances as set out in Plaintiff's Petition to Set Aside Conveyances on file in this action." |
| 1-24-00 | 309 | Johnston files a second amended petition to set aside conveyances, including allegations against Crook identical to those in Hartwell's 7-9-96 petition, and again pleading the discovery rule. |
| 1-24-00 | 309 | Johnston files a traditional motion for partial summary judgment. |
| 3-22-00 | 309 | Crook files an amended original answer, asserting a general denial and the affirmative defenses of waiver, estoppel, limitations, laches, and res judicata, and alleging the cause of action constitutes an impermissible collateral attack on Crook's divorce. |
| 8-2-00 | 309 | Court denies Johnston's motion for partial summary judgment. |
| 10-6-00 | 309 | Crook files a motion for summary judgment, alleging Johnston's claims are barred by estoppel, res judicata, the doctrine of collateral attack on existing judgments, and limitations. She alleges the house was transferred on April 2, 1990; the ring, by February 7, 1992; and the cash, by July, 1993. She does not address the issue of discovery in relation to any of the alleged transfers. |
| 10-19-00 | 309 | Johnston responds, in part alleging the motion, filed three days before the case was set for trial, was not timely filed and contained numerous factual inaccuracies. |

11–3–00   309   Court grants Crook's summary judgment motion.